IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RYAN HARWICK and SEAN HARWICK, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs ) | Case No. 19 C 8305 |
| ) | |
| AXA EQUITABLE LIFE INSURANCE CO., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Ryan and Sean Harwick filed suit in state court against AXA Equitable Insurance Company to recover death benefits under their deceased father Douglas Harwick's life insurance policy. AXA removed the case to federal court based on diversity of citizenship. The Harwicks and AXA have now filed cross motions for summary judgment. For the reasons stated below, the Court grants the Harwicks' motion and denies AXA's motion.

### Background

Douglas Harwick died on April 19, 2019 in Plainfield, Illinois from metastatic non-small cell lung cancer. Ryan and Sean Harwick ("the Harwicks"), Douglas's sons, were the beneficiaries of his life insurance policy, which was issued by AXA.

AXA issued the policy, which had a face value of $250,000, in 1993. From September 30, 1993 to December 14, 2018, Douglas Harwick made quarterly premium payments in the total amount of $23,797.50. After their father's death, the Harwicks

twice submitted a claim for payment of the policy's death benefits. On May 20, 2019 and May 28, 2019, AXA informed the Harwicks that the policy had lapsed due to non-payment.

AXA had sent a "Notice of Payment Due" to Douglas Harwick dated February 21, 2019, stating that a premium payment was due on March 15, 2019. This was the only notice AXA sent to Douglas Harwick regarding the March quarterly premium payment. Douglas Harwick did not make that premium payment before he died on April 19.

In this lawsuit, the Harwicks contend that AXA wrongly denied payment of the insurance policy's death benefits. Although the policy states that it will lapse if AXA does not receive payment within thirty-one days of the premium due date, *see* Stipulated Statement of Facts, Ex. 1, ECF p. 19 of 50, the Harwicks argue that as a matter of law, AXA was not entitled to declare the policy forfeited as of the time of their father's death. They rely on a provision of the Illinois Insurance Code, 215 ILCS 5/234(1), which prohibits a life insurance company from declaring a policy forfeited or lapsed within six months of an unpaid premium unless the issuer has sent notice to the insured stating, among other things, that in the event of nonpayment, "the policy and all payments thereon will become forfeited and void, except as to the right to a surrender value or paid-up policy as provided for by the policy." The Harwicks contend that the notice sent by AXA, *see* Stipulated Statement of Facts, Ex. 5, did not state or convey that the policy would become forfeited and void if the March premium went unpaid. AXA contends that the notice substantially complied with section 234(1)'s requirements.

## Discussion

The Harwicks and AXA Equitable have filed cross motions for summary

judgment. In considering such motions, a court construes all facts and inferences from those facts in favor of the party against whom the particular motion under consideration is made. *See, e.g., Market Ins. Co. v. Rao*, 954 F.3d 1012, 1016 (7th Cir. 2020). In this case, the Harwicks and AXA have stipulated to the pertinent facts, and they agree that the only question for the Court is whether the AXA's "Notice of Payment Due" complied with the requirements of 215 ILCS 5/234(1).

As stated earlier, section 234(1) prohibits a life insurance company from declaring a policy forfeited or lapsed within six months after a default in payment of a premium installment unless the insurer has sent notice that states, among other things, "that unless such premium or other sums due shall be paid to the company or its agents the policy and all payments thereon will become forfeited and void, except as to the right to a surrender value or paid-up policy as provided for by the policy." 215 ILCS 5/234(1). The notice that AXA sent to Douglas Harwick in February 2019 regarding the March 2019 quarterly payment did not include this language. Rather, it stated as follows:

> **What if you do not pay your premium on time?** Pay your premiums promptly to assure that you keep your insurance in full effect. If a premium is not paid by the end of the grace period the policy will terminate except for any continuing insurance benefits that may be provided by any cash value under the policy or by law.
> In any event, supplemental benefits (such as those provided by accidental death or additional term insurance provisions) do not continue after the grace period.

Stipulated Stat. of Facts, Ex. 5 at 2.

The parties dispute whether an insurer that does not give notice using the exact language set out in section 234(1) is precluded from declaring a policy forfeited or lapsed following a missed premium payment. The Court need not resolve this point.

3

AXA concedes that the purpose of section 234(1) is to advise the policy holder "as to the ramifications of a failure on his part to pay the premium in a timely manner." Def.'s Opp. to Pls.' Mot. for Summ. J. at 5 (citing *Time Ins. Co. v. Vick*, 250 Ill. App. 3d 465, 476, 620 N.E.2d 1309, 1316 (1993); *Cullen v. N. Am. Co. for Life & Health Ins.*, 76 Ill. App. 3d 643, 646, 531 N.E.2d 390, 392 (1988)). The Court agrees. Even if section 234(1) does not require a notice that uses the statutory terminology verbatim, the statute would be meaningless, and its purpose would be defeated, if it did not at least require an insurance company to convey clearly the consequences of nonpayment of a premium.

The notice that AXA sent to Douglas Harwick did not do this; it was, at best, ambiguous. Saying that a policy "terminates" conveys a different message from saying that it is "forfeited" or "void." What does it mean for a policy to "terminate"? The notice did not say. And even though the use of the word "terminate" certainly indicated the possibility of some negative consequence, that word did not stand alone. Context matters. The negative consequence was tempered, if not taken away, by the language that followed: the policy would "terminate *except for any continuing insurance benefits that may be provided* by any cash value under the policy or *by law*." Stipulated Stat. of Facts, Ex 5 at 2 (emphasis added). The "except for" clause appears to convey the opposite of what section 234(1) contemplates; it says that insurance benefits will *not* be cut off by missing a premium payment if this is "provided . . . by law." Indeed, because the law does not allow forfeiture unless the insurer has provided clear notice of the consequences of nonpayment, this language made AXA's notice virtually circular: by virtue of section 234(1), insurance coverage does in fact continue "by law" if the

insurance company's notice is deficient.

The language that AXA used in its notice was materially different from the language found sufficient in *Vick* and the other cases relied upon by AXA. In *Vick*, the notice stated that if the premium was not paid when due, "the policy and all payments thereon *will become forfeited and void*, except as provided in said policy." *Id.* at 466, 620 N.E.2d at 1316 (emphasis added). In *Nieder v. Jackson National Life Insurance Co.*, No. 10 C 6766, 2011 WL 3798224 (N.D. Ill. Aug. 22, 2011), according to AXA,[1] the insurance company's notice said that if the premium was not paid, "your policy will lapse and *all coverage under this policy will end on August 05, 2009*."

The language the insurance company used in each of these cases made it quite clear that missing a payment meant the life insurance was gone; it said that "all coverage under this policy will end" or that "the policy will become forfeited and void." By contrast, the wording used in AXA's notice—"the policy will terminate except for . . ."—does not convey the same message; it is nothing if not unclear. Finally, *Sistler v. Illinois Bankers Life Assurance Co.*, 341 Ill. App. 512, 95 N.E.2d 507 (1950), also cited by AXA, does not address section 234(1) at all, and in any event the notice sent by the insurer in that case *did* clearly convey that there would be no insurance coverage if a premium payment was missed: it said that unless the premium was paid when due or within thirty days thereafter, "the Policy and all payments thereon will become forfeited." *Id.* at 517, 95 N.E.2d at 509. The notice sent by AXA in this case included no similar "forfeiture" language.

The Court finds this case to be more like *Wegrzyn v. Jackson National Life*

---

[1] The decision itself does not quote the language of the notice.

5

*Insurance Co.*, No. 10 C 2140, 2011 WL 2672510 (N.D. Ill. July 8, 2011), cited by the Harwicks. In *Wegrzyn*, the insurance company's notice stated that failure to pay the premium "will cause your insurance policy to lapse." *Id.* at *2. The court concluded that in addition to failing to include the statutory "forfeited and void" language, the use of the term "lapse" was "not sufficiently precise" and seemed "unclear regarding whether it is conveyed that the Policy would become forfeited and void." *Id.* at *3. The same is true here. Saying that the insurance policy would "terminate" if Douglas Harwick missed a payment is not the same as saying that he would "forfeit" the policy or that it would become "void." And just as importantly, the notice's statement that the insurance would remain in effect even after missing a premium payment if that was "provided . . . by law" effectively took away, or at least rendered seriously ambiguous, any negative consequence conveyed by the language that AXA used.

      For these reasons, the Court concludes that the nonpayment notice provided by AXA did not meet the requirements of 215 ILCS 5/234(1). Thus under the statute, AXA was not permitted to declare the life insurance policy to be forfeited or lapsed as of the time of Douglas Harwick's death or his sons' claim under the policy.

### Conclusion

      For the reasons stated above, this Court grants the plaintiffs' motion for summary judgment [dkt. no. 21] and denies the defendant's motion for summary judgment [dkt. no. 23]. The Court assumes that at this point, all that remains to be done is the entry of judgment. The parties are directed to promptly confer regarding the form of the judgment and are to submit a draft order to Judge Kennelly's proposed e-mail address by no later than January 6, 2021. The case is set for a telephone status hearing on

January 8, 2021 at 9:30 a.m., using call-in number 888-684-8852, conference code 746-1053. The Court reserves the right to vacate the status hearing if it does not have any questions regarding the parties' submission.

Date: December 27, 2020

 _____
 MATTHEW F. KENNELLY
 United States District Judge